**Attachment A**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA



FILED

JAN 2 8 2021

U.S. DISTRICT COURT-WVND
MARTINSBURG, WV 25401

_Joseph  FRANK  STevens_

_Your full name_

v.

_O. D. Tolliver_

_Joe Yeager_

_R. Petrousky_

_Enter above the full name of defendant(s) in this action_

**FEDERAL CIVIL RIGHTS
COMPLAINT
(_BIVENS_ ACTION)**

Civil Action No.: _3:21 cv 16_
_(To be assigned by the Clerk of Court)_

## I.    JURISDICTION

This is a civil action brought pursuant to **Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971)**.  The Court has jurisdiction over this action pursuant to Title 28 U.S.C. §§ 1331 and 2201.

## II.    PARTIES

_In Item A below, place your full name, inmate number, place of detention, and complete mailing address in the space provided._

    A.    Name of Plaintiff: _Joseph Frank Stevens_ Inmate No.: _27666-055_
        Address: _236 Carolina Street   Olean New York 14760_

_In Item B below, place the full name of each defendant, his or her official position, place of employment, and address in the space provided._

**Attachment A**

B.    Name of Defendant: _D.D. TOLLiveR_
       Position: _cAmp ADmiNiSTRATOR_
       Place of Employment: _FCI GiLmoR_
       Address: _P.o. Box 6000_
       _GLenvilLe west viRginiA 26351_

Was this Defendant acting under the authority or color of federal state law at the time these claims occurred?    ☒ Yes       ☐ No

If your answer is "YES," briefly explain: _DefeNDANT_
_WAS AcTing AS The CAmp ADmiNiSTRATOR_

B.1    Name of Defendant: _JoE Yeagon_
       Position: _SecReTARY_
       Place of Employment: _F CI GiLmeR_
       Address: _P. o. Box 6000_
       _GLenvilLe west viRgiNiA 26351_

Was this Defendant acting under the authority or color of federal state law at the time these claims occurred?    ☒ Yes       ☐ No

If your answer is "YES," briefly explain: _DefeNDART_
_WAS AcTing AS The CAmp SecReTARY_

B.2    Name of Defendant: _R. PeTRovsKY_
       Position: _CAmp CounseLoR_
       Place of Employment: _FCI GiLmen_
       Address: _P.o. Box 6000_
       _GLenvilLe west viRginiA_

Was this Defendant acting under the authority or color of federal state law at the time these claims occurred?    ☒ Yes       ☐ No

**Attachment A**

If your answer is "YES," briefly explain: _DEFENDANT_
_WAS acTING As The CAmP COUNSELOR_

_____

_____

_____

B.3   Name of Defendant: _____ N A _____

Position: _____

Place of Employment: _____

Address: _____

_____

Was this Defendant acting under the authority or color of federal state law at the time these claims occurred?    ☐ Yes          ☐ No

If your answer is "YES," briefly explain: _____

_____

_____

_____

_____

B.4   Name of Defendant: _____ N |A _____

Position: _____

Place of Employment: _____

Address: _____

_____

Was this Defendant acting under the authority or color of federal state law at the time these claims occurred?    ☐ Yes          ☐ No

If your answer is "YES," briefly explain: _____

_____

_____

_____

_____

**Attachment A**

B.5    Name of Defendant: ___N/A_____
       Position: _____
       Place of Employment: _____
       Address: _____

       _____

       Was this Defendant acting under the authority or color of federal state
       law at the time these claims occurred?    ☐ Yes         ☐ No

       If your answer is "YES," briefly explain: _____

       _____

       _____

       _____

III.    <u>PLACE OF PRESENT CONFINEMENT</u>

Name of Prison/ Institution: ___I WAS Released on 4/27/2020_____
                From FCI Gilmer Camp
       A.    Is this where the events concerning your complaint took place?
                ☒ Yes        ☐ No

             If you answered "NO," where did the events occur?

             _____

       B.    Is there a prisoner grievance procedure in the institution
             where the events occurred?        ☐ Yes        ☐ No    N/A

       C.    Did you file a grievance concerning the facts relating to this complaint in the
             prisoner grievance procedure?
                ☐ Yes        ☐ No            N/A

       D.    If your answer is "NO," explain why  not: ___N/A_____

             _____

             _____

       E.    If your answer is "YES," identify the administrative grievance procedure
             number(s) in which the claims raised in this complaint were addressed

**Attachment A**

and state the result at level one, level two, and level three.  **ATTACH**
**GRIEVANCES AND RESPONSES:**

LEVEL 1 _____ n/a _____

LEVEL 2 _____ n/a _____

LEVEL 3 _____ n/a _____


IV.    PREVIOUS LAWSUITS AND ADMINISTRATIVE REMEDIES

A.    Have you filed other lawsuits in state or federal court dealing with the same
facts involved in this action?          □ Yes       ☒ No

B.    If your answer is "YES", describe each lawsuit in the space below.  If there
is more than one lawsuit, describe additional lawsuits using the same format
on  a separate piece of paper which you should attach and label: "IV
PREVIOUS LAWSUITS"

1.    Parties to this previous lawsuit:

Plaintiff(s):_____

Defendant(s):_____

2.    Court: _____
      *(If federal court, name the district; if state court, name the county)*

3.    Case Number:_____

4.    Basic Claim Made/Issues Raised: _____
      _____
      _____
      _____

5.    Name of Judge(s) to whom case was assigned:
      _____

6.    Disposition: _____
      *(For example, was the case dismissed?  Appealed?  Pending?)*

7.    Approximate date of filing  lawsuit:_____

**Attachment A**

8.    Approximate date of disposition. Attach Copies:_____

C.    Did you seek informal or formal relief from the appropriate administrative officials regarding the acts complained of in Part B?
          □ Yes        □ No

D.    If your answer is "YES," briefly describe how relief was sought and the result. If your answer is "NO," explain why administrative relief was not sought.

_____

_____

_____

_____

E.    Did you exhaust available administrative remedies?
          □ Yes        □ No

F.    If your answer is "YES,", briefly explain the steps taken and attach proof of exhaustion. If your answer is "NO," briefly explain why administrative remedies were not exhausted.

_____

_____

_____

_____

G.    If you are requesting to proceed in this action *in forma pauperis* under 28 U.S.C. § 1915, list each civil action or appeal you filed in any court of the United States while you were incarcerated or detained in any facility that was dismissed as frivolous, malicious, or for failure to state a claim upon which relief may be granted. Describe each civil action or appeal. If there is more than one civil action or appeal, describe the additional civil actions or appeals using the same format on a separate sheet of paper which you should attach and label "G. PREVIOUSLY DISMISSED ACTIONS OR APPEALS"

1.    Parties to previous lawsuit:

**Attachment A**

Plaintiff(s): _____

Defendant(s): _____

2. Name and location of court and case number:

_____
_____
_____

3. Grounds for dismissal:   ☐ frivolous   ☐ malicious
☐ failure to state a claim upon which relief may be granted

4. Approximate date of filing lawsuit: _____

5. Approximate date of disposition: _____

## V.   STATEMENT OF CLAIM

*State here, as **BRIEFLY** as possible, the facts of your case. Describe what each defendant did to violate your constitutional rights.* ***You must include allegations of specific wrongful conduct as to EACH and EVERY defendant in the complaint.*** *Include also the names of other persons involved, dates, and places. Do not give any legal arguments or cite any cases or statutes. If you intend to allege a number of related claims, you must number and set forth each claim in a separate paragraph.* ***UNRELATED CLAIMS MUST BE RAISED IN SEPARATE COMPLAINTS WITH ADDITIONAL FILING FEES. NO MORE THAN FIVE (5) TYPED OR TEN (10) NEATLY PRINTED PAGES MAY BE ATTACHED TO THIS COMPLAINT. (LR PL 3.4.4)*

CLAIM 1: _____See ATTACHED_____

_____
_____
_____
_____

Supporting Facts: ____See ATTACHED_____

---

**Attachment A**

_____

_____

_____

_____

CLAIM 2: _____ N/A _____

_____

_____

_____

Supporting Facts: _____ N/A _____

_____

_____

_____

CLAIM 3: _____ N/A _____

_____

_____

_____

Supporting Facts: _____ N/A _____

_____

_____

_____

CLAIM 4: _____ N/A _____

_____

_____

_____

Supporting Facts: _____ N/A _____

_____

**Attachment A**

CLAIM 5: _____ N|A _____

Supporting Facts: _____ N|A _____

## VI. INJURY

Describe **BRIEFLY and SPECIFICALLY** how you have been injured and the exact nature of your damages.

_____ See ATTAcheD _____

## VII. RELIEF

State **BRIEFLY and EXACTLY** what you want the Court to do for you. *Make no legal arguments. Cite no cases or statutes.*

_____ See ATTAcheD _____

**Plaintiff: Joseph Stevens Claim**

The Plaintiff alleges that the Defendants violated his 8th amendment civil rights and subjected him to cruel and unusual punishment by forcing him to work despite lifting restrictions in his medical records and forcing him to work injured despite an open/pending sick call request . The Eighth Amendment's prohibition against cruel and unusual punishment forbids knowingly compelling an inmate to perform labor that is beyond the inmate's strength, dangerous to his or her life or health, or unduly painful. See Madewell v. Roberts, 909 F.2d 1203, 1207 (8th Cir.1990).The Plaintiff, alleges that the Defendants assigned him to a job/task where they knew or should have known that the Plaintiff was not physically able to perform the job/task. The Plaintiff, while as a Pre-Trial Detainee, in the Custody of the United States Marshall Service ,had a surgical procedure called Hemiarthroplasty on his right shoulder and rotator cuff repair (Doc 1).The Surgeon, during an office visit on 2/9/2018, commented that the Plaintiff should avoid any heavy lifting.(Doc 1) Also, his prison medical records indicate that the Plaintiff has a lifting restriction of 15lbs. (Doc 2)

The job/task assigned to the Plaintiff, by the Defendants, included lifting 40-50 lbs. of full garbage cans into the trash compactor , lifting cases of apples and bananas and cases of pre-packaged meals, all weighting over 15lbs. The Plaintiff alleges during the time period August 23 – 25, 2019, while working at the main prison, FCI Gilmer,  he reinjured his rotor cuff and felt his shoulder move out of place.  On Tuesday, August 27, 2019, the Plaintiff put in a sick call request to see the Doctor.(Doc 3) And on September 5, 2019, the Plaintiff send an email to the Health Service Department to follow up on the sick call. (Doc 4 ) On that same date, September 5, 2019,The Main Prison FCI Gilmer  was on Lockdown Mode,  the Plaintiff was ordered to report to work or be placed in the "SHU" Special Housing Unit by the Defendant# 2 even thou The Plaintiff  showed Defendant #2, a copy of the email (sick call ) requesting to see the medical staff.  The Plaintiff, alleges beside working August 23 – 25, 2019,  he was additionally forced to work at the job/task September 5 – 8, 2019, the week before Thanksgiving of 2019 and January 1 – 5, 2020 despite, the Plaintiff alleging that he had 15 lifting restriction, in his medical records, and he reinjured his rotor cuff and his shoulder components were out of place.  Based on his medical records, his shoulder components maintained  in place on 2/9/2018 (Doc 1) and 3/28/2018 (Doc 5) during scheduled office visits with his surgeon.   But to prove that the Plaintiff's shoulder components were out of place, upon the Plaintiff's release from the BOP on 4/27/2020, the Plaintiff had an office visit on August 3, 2020, with an orthopedic surgeon  and x-rays were taken  on his right shoulder to confirm his right shoulder components are out of place.

The Plaintiff alleges that he can show/prove/ demonstrate that The Defendants had a sufficiently culpable state of mind (deliberate indifference) in this claim for violation of his 8th amendment civil rights .The Plaintiff alleges that the day he was first assigned to the "PM Lockdown Crew",(August 23, 2019) he informed Defendant #2, that "while in the Custody of the United States Marshal Service, he had Right total shoulder hemi-arthroplasty and rotator cuff repair surgery on December 20, 2017 and had lifting restrictions , and said "Please check my medical records.". All Defendant #2 said " If you do not report to work as assigned, you are going to the SHU" Also during the lockdown in November of 2019 , The Defendant #3, assigned the Plaintiff to the "PM Lockdown Crew , despite that  The Plaintiff said "Please check my medical records, I have lifting restrictions" (The Plaintiff was assigned back to the "PM Lockdown Crew" because during the previous lockdown in October 2019, the Plaintiff was in the "SHU" and another "Camper" was assigned to his task/job). The Plaintiff alleges/pleads  that during the lockdown from January 1 – 5,  2020, since The Plaintiff was on the PM Lockdown Crew list , he was forced to work during that period. The Plaintiff alleges that once he informed Defendant # 2 and Defendant #3 that he had lifting restrictions in his in medical records, the Defendants had an obligation to inquire further. And Defendant #2 and Defendant #3 did not inquire further. Sanchez, 144 F.3d 1154, 1156.  The Plaintiff alleges that this evidence proves deliberate indifference . See Farmer v. Brennan, 511 U.S. 825, 842-43 & n. 8, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) (requisite actual knowledge of

substantial risk to inmate is factual inquiry and may be inferred from circumstantial evidence; prison official "would not escape liability [under the Eighth Amendment] if the evidence showed that he merely refused to verify underlying facts that he strongly suspected to be true, or declined to confirm inferences of risk that he strongly suspected to exist").The Plaintiff alleges on September 5, 2019, when he presented Defendant #2, a copy of the email that The Plaintiff has an open pending sick call , Defendant #2 was aware of the facts, that the Plaintiff may have damaged his shoulder and told him to report to his assigned task, even thou there was a substantial risk of serious harm to the Plaintiff. (This is deliberate indifference ) The Plaintiff alleges that he was an Administrative Headache to Defendant #1.  The Plaintiff on or about the time frame of August 23- 26, 2019, send Defendant #1 an email thru the prison email system asking "how much credit that he will receive in commissary credit for working on the "PM Lockdown Crew" (at the Cumberland MA Camp/his previous housing, Campers would receive commissary credit for working during a lockdown), Defendant #1, during his weekly walk thru of the Camp,  confronted the Plaintiff, and stated the he does not issue commissary credits for the  Lockdown Crew. The Plaintiff alleges that Defendant #1 wanted to put the screws to him, for questioning his Authority. Also, the Plaintiff states that he sent Defendant #1 an email ,requesting a blue exercise mat, so he can put the mat under his bedding for additional cushion/comfort since the Plaintiff saw other inmates using the blue exercising mats for additional cushion/comfort. Also, The Plaintiff, was escorted, by Defendant #2 to the Office of Defendant #1 at the main Prison at FCI Gilmer, to discuss the email that the Plaintiff send Defendant #1, stating that Defendant #1, should do his job and resubmit The Plaintiff's paperwork to redetermine his "Halfway House" time based on the implication of the "First Step Act" by the BOP on July 19, 2019. (The Plaintiff alleges that the original paperwork to determine his "Halfway House" time was submitted after President Trump signed the First Step Act but before the implication of the First Step Act by the BOP on July 19, 2019) . The Plaintiff  also send Defendant # 1 an email "Called the Twelve Days of Christmas , What the Inmate Food Service Workers At The Camp Stole Out of The Kitchen" (One Stick of Butter, Two Turkey Legs,, Five Pounds of Potatoes, , You get the picture, Because the inmate Food Service Workers ate better than the inmates/Campers" As noted in this compliant, The Plaintiff was an Administrative Headache to the Defendant #1 and the facts listed above should be evaluated in determining the sufficiently culpable state of mind of Defendant #1 in the final determination of assigning the Plaintiff to the PM Lockdown Crew, since Defendant # 1 has the final determination of an inmate obtaining a job at the Camp. The Plaintiff alleges that Defendant  #1 , as the Camp Administrator, knew or should have known the lifting restrictions of the Plaintiff, since the attributes and weakness,(a medical condition) are evaluated  of each inmate applying/bidding on a job in the Camp or assigning a task/job. (It is only logic that an opening for a mechanic position be filed with an inmate with auto mechanic experience and has the physical capability to lift heavy tools) . A plaintiff cannot maintain a claim against a supervisor under § 1983 unless he alleges (1) that the supervisor had actual or constructive knowledge that his subordinate[s were] engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to . . . plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) that there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994) The Plaintiff alleges he can maintain a claim against Defendant #1 under (2) just listed above, that the Defendant # 1 response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of Defendant #2 and Defendant #3 decision to assign the Plaintiff to the job/task.

The Plaintiff alleges that he can prove that he performed the job/task. The Plaintiff was a "Camper" at the satellite Camp. The job/task was at the Main Prison at FCI Gilmer during lockdowns. After entering the front door of the main lobby, The Plaintiff had to show his ID and the Guard at the Front Desk compared to the list of workers of the day. Then he went thru the metal detector, then searched. Then thru a metal door buzzed in to another door and so on. You get the point. There should be a list of workers from each day the "Campers" worked during each lockdown. The Plaintiff alleges that any future/subsequential Statue of Limitations issues brought up by the Defendants would not survive legal mustard due to the fact of the alleged civil rights violations occurred within the two year statute of limitation period of West Virginia personal injury statue. (The Plaintiff was transferred to the Camp at Gilmer on August 6, 2019) The Plaintiff alleges that any future/subsequential affirmative defense of qualified immunity or supervisory issues brought up by the Defendants would not survive legal mustard due to the fact "Individual defendants named in a § 1983 action may raise a defense of qualified immunity, which shields public officials from damages actions unless their conduct was unreasonable in light of clearly established law. Qualified immunity protects `all but the plainly incompetent or those who knowingly violate the law.'" (Defendant # 2 and Defendant # 3 had an obligation to research the validity of The Plaintiff 's allegation of the lifting restriction in his medical records ) And showing that actions or lack of action taken by officials with final policymaking authority caused a constitutional violation.(Defendant #1 is the Camp Administrator, and is involved in all aspects of the operations of the Camp, including job assignments) The Plaintiff alleges that any future/subsequential affirmative defense of Personal jurisdiction issues brought up by the Defendants would not survive legal mustard due to the fact all three Defendants are residents of the State of West Virginia . The Plaintiff alleges that any future/subsequential affirmative defense of subject matter jurisdiction issues brought up by the Defendants would not survive legal mustard due to the fact that the alleged civil rights violations happen on the Grounds of FCI Gilmer Camp and/or Main Prison on Federal land . The Plaintiff alleges that any future/subsequential affirmative defense of failure to state a claim issues brought up by the Defendants would not survive legal mustard due to the fact that the Plaintiff's allegations are well detailed above.

The Plaintiff alleges/pleads that he is not a lawyer, but, As William Shakespeare writes in Hamlet **" Something is rotten in the state of Denmark"** Not once, not twice, not three, but four different periods/episodes during Lockdown Mode at the FCI at Gilmer, The Plaintiff was forced to perform labor that was beyond his strength, despite every time he informs the Defendants to verify his medical rights that he has lifting restrictions in his medical files . This is no mere accident; this is intentional malice. This is so reprehensibility, which goes against the dignity of man. . The Plaintiff does not want to use the "R " Word, **but Mauldin: I'm Shocked, Shocked to Find There's Gambling Going on in Here**. Also, during the Lockdown from January 1 – 5, 2020, The Plaintiff alleges/pleads on Saturday January 4, 2020 between 2:00 PM and 3:00 PM, an Officer working in Main Kitchen at FCI Gilmer attempted to sexually assault The Plaintiff. The incident was caught/captured on tape and the Plaintiff filed A PREA Compliant on the Officer and the SIS Department at FCI Gilmer launched an investigation. The Plaintiff was "Casualty of War" "Wrong Place/Wrong Time" caused by the Defendants.

**Plaintiff: Joseph Stevens Relief**
The Plaintiff is requesting $2,250,000 in compensatory damages (Economic) as a result of loss of earnings capacity ($78,000 per year x 29.40% U.S. Bureau of Labor Statistics benefit rate = $100,932 x present value of 22.023 = $2,250,000 rounded up (25 years term 1% interest rate ) In an article published by CNN Business , written by Anna Bahney on June 6,2019 , that the average salary of a college graduate is $78,000.The Plaintiff is in the process of applying for Federal Social Security Disability Benefits. .,as a result of permanent damage (implant/component is out of place.)to the right shoulder caused by the Defendants forcing the Plaintiff to lift beyond his capacity.

The Plaintiff is requesting $250,000 for compensatory and discretionary (Non-Economic) (pain and suffering)(West Virginia limit) for damages of loss of enjoyment of life. The Plaintiff alleges that he will never be able to play golf again (for the next 25 years) and throw a baseball or a football to his future grandchildren.

The Plaintiff is requesting $9,000,000 for punitive and exemplary damages(West Virginia Limit is 4 times compensatory damages) as a result of The Defendants' actions constitute a high degree of immorality/unconceivable/ reprehensibility acts against the dignity of man. The Plaintiff admits that he was an Administrative Headache and did not conform /adopt to the "Federal Prison Culture" , therefore The Plaintiff alleges that the Defendants wanted to put the screws to The Plaintiff. But does The Plaintiff by not conforming to "Federal Prison Culture" deserve the cruel and unusual punishment by forcing him to work despite lifting restrictions and causing permanent damage to his shoulder causing his implant/component to move ? Also, as a result of the reprehensibility acts against the dignity of man, The Plaintiff was placed in an environment by the Defendants , that allowed/contributed an Officer working in Main Kitchen at FCI Gilmer to attempt to sexually assault The Plaintiff. (The Plaintiff would have never been placed in that environment or situation if the Defendants reviewed his medical records)   The degree of reprehensibility of a defendant's conduct is "[p]erhaps the most important indicium of the reasonableness of a punitive damages award." *Gore,* 517 U.S. at 575, 116 S.Ct. 1589. In evaluating reprehensibility, courts should consider the following factors: (1) whether the harm caused was physical as opposed to economic; (2) whether the defendant acted with indifference or a reckless disregard for the health or safety of others; (3) the financial vulnerability of the plaintiff; (4) whether the defendant's wrongful conduct involved repeated actions or was an isolated incident; and (5) whether the harm was the result of intentional malice, trickery, or deceit, or mere accident. "[A] jury may be permitted to assess punitive damages in an action under § 1983 when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade,* 461 U.S. 30, 56, 103 S.Ct. 1625, 75 L.Ed.2d 632 (1983); *Hardeman v. City of Albuquerque,* 377 F.3d 1106, 1120-21 (10th Cir. 2004).

.

Attachment A

# DECLARATION UNDER PENALTY OF PERJURY

The undersigned declares under penalty of perjury that he/she is the plaintiff in the above action, that he/she has read the above complaint and that the information contained in the complaint is true and accurate.  Title 28 U.S.C. § 1746; 18 U.S.C. § 1621.

Executed at _236 CAROLINA Street OLean New York 14760_ on _1/19/2021_ .

                (Location)                      (Date)

                                            Your Signature